UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DAVID HARDY,

                Plaintiff,                            Case No. 2:13-cv-37

v.                                                               Honorable R. Allan Edgar

WILLIAM ADAMS,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, without immediate payment of the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff David Hardy, a state prisoner confined to the Bellamy Creek Correctional Facility, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Assistant Resident Unit Supervisor William Adams, Assistant Resident Unit Supervisor Linda Adams, Resident Unit Manager Unknown Ault, Resident Unit Officer Unknown Russell, Resident Unit Officer Unknown Witgen, Resident Unit Officer Unknown Riedel, Warden Greg McQuiggin, Assistant Resident Unit Supervisor Unknown Gerry, Assistant Resident Unit Supervisor Unknown Batho, Resident Unit Manager Unknown Mansfield, Assistant Deputy Warden Jacqueline Nadeau, Assistant Deputy Warden Cecil Daley, Corrections Officer Unknown Bender, Corrections Officer Unknown Beamish, Corrections Officer Unknown MacDonald, Corrections Officer Unknown Tarbell, Assistant Deputy Warden Unknown Olson, Resident Unit Officer Dowley or Darling, and Psychologist Kyle Wood.

In Plaintiff's fifty-nine page complaint, he alleges that he was falsely accused of assaulting Librarian Amanda Winnicki and that he raised this claim in *Hardy v. Winnicki*, 2:09-cv-259. Following this false accusation, Plaintiff was placed in segregation and was harassed and denied health care. Plaintiff then filed two other federal complaints, *Hardy v. Bolton*, 2:09-cv-256, and *Hardy v. West*, 2:09-cv-257. Plaintiff was subsequently transferred from the Chippewa Correctional Facility to the Central Mid-Michigan Correctional Facility. At this point, Plaintiff was told that if he did not send some of his legal property home, it would be thrown away. Plaintiff filed a grievance on this matter, explaining that his property was packed up by staff while he was in the hospital with a collapsed lung, and asserting that his property was in compliance with MDOC policy. Plaintiff claims that a hearing on July 8, 2009, had already determined that his excess legal property

was within policy limits. Plaintiff states that another hearing held on December 1, 2011, reached the same conclusion.

At one point, Defendant Linda Adams told Plaintiff that staff could make his life a living hell. Plaintiff filed a kite reporting the incident and refused to report back to his housing unit. Subsequently, Lieutenant Childs had Defendant Linda Adams informed Plaintiff that he could transfer to any housing unit, so long as he stayed in the same facility. Plaintiff moved to A Unit, where unbeknownst to Plaintiff, Linda Adams' spouse was the Assistant Resident Unit Supervisor. Plaintiff alleges that under Defendant William Adams supervision, there was a "campaign of harassment" carried out by Defendants Russell, Witgen, and Riedel, who wrote numerous misconduct tickets on Plaintiff. This harassment resulted in Plaintiff being transferred back to the Chippewa Correctional Facility (URF) on March 23, 2011. Plaintiff claims that Defendant Ault was the supervisor of all Assistant Resident Unit Supervisors and was also responsible for the harassment.

Plaintiff also complains about a misconduct ticket which was written by Defendant Witgen on October 16, 2010, after Plaintiff mistakenly left all of his ink pens at the law library. Plaintiff states that he repeatedly asked Defendant Witgen to call the school about the pens, to no avail. So Plaintiff went to retrieve the pens, which resulted in the misconduct ticket. On July 26, 2010, Defendant Russell wrote a misconduct on Plaintiff for leaving clothes on his bed. Plaintiff claims that he had received permission from a prison doctor to use "something" to prop his legs up in order to alleviate back pain.

During Plaintiff's confinement in segregation at URF, he was subjected to exposure to gas, which could have resulted in serious injury or death because of Plaintiff's history of lung

problems. After his transfer to URF, Plaintiff was not allowed to inspect his property until June 8, 2011, when he was transferred to the Alger Maximum Correctional Facility (LMF). It was at this point that Plaintiff discovered that some of his property was missing. Plaintiff did not file a grievance because it would have been time barred. Plaintiff claims that one of the missing items was a "personal letter" he had written to Wayne County Prosecutor Kym Worthy. Plaintiff states that he also had numerous religious news articles, magazines, and a few personal items, such as cosmetics, missing from his property. Plaintiff also claims that Defendants' conduct in transferring him between prisons interfered with his ability to pursue relief in *Hardy v. Winnicki*, 2:09-cv-259.

Furthermore, Plaintiff alleges that when he arrived in segregation at URF, Defendant MacDonald wrote him a misconduct and confiscated Plaintiff's two inhalers. Staff at URF refused to investigate Plaintiff's claims that he was in fear for his life, and did not allow Plaintiff to access his legal property pursuant to MDOC policy. In April of 2011, Plaintiff was seen by two nurses and was given Naproxen for pain in Plaintiff's back, knees, feet and ankles. Plaintiff asserts that according to Webster's Medical Dictionary, Naproxen is used for arthritis and was not effective for his pain. Plaintiff claims that he was not even given aspirin. Plaintiff states that Physician Assistant Millet falsely told him that there was nothing in his file regarding seizures. Plaintiff claims that during this same time period, Defendant Tarbell deprived Plaintiff of a shower and then lied about it, stating that Plaintiff refused to leave the shower stall. Plaintiff states that on at least three occasions, segregation officers had Plaintiff go to the shower last and paraded him before Defendant McQuiggin as a prisoner who had been causing legal problems for staff.

Plaintiff states that he was never given a copy of the rules for segregation and was unaware that he could not keep any packets of drink mix, sugar, salt or pepper in his cell.

Consequently, Plaintiff was given a misconduct and was placed on food loaf for three days. Plaintiff states that because he could not digest food loaf, he went hungry for three days. Plaintiff complains that he received additional false misconduct tickets from Defendants Beamish and Bender, and that this conduct was "condoned" by Defendant Batho and Assistant Resident Unit Supervisor Derry. Plaintiff wrote a letter of complaint to Attorney General Bill Schuette, and was subsequently transferred to the Alger Maximum Correctional Facility. Plaintiff also claims that Defendant Batho and Assistant Resident Unit Supervisor Derry refused to mail Plaintiff's legal mail on some occasions and that this caused one of Plaintiff's appeals to be dismissed by the Sixth Circuit.

Plaintiff also lists various other instances of alleged "retaliatory" conduct, including the assertion that he did not receive law books for a whole week in May of 2011, and that several guards incited other inmates to "psychologically torture" Plaintiff on an unspecified occasion. Plaintiff claims that on May 29, 2011, he experienced a respiratory attack and asked prison guards for help, but nothing was done. Plaintiff states that on June 3, 2011, another inmate was gassed and he was forced to stay in the unit for two hours, causing Plaintiff to fear that he would not be able to breath. In either April or May of 2011, Defendant Wood came by Plaintiff's cell and engaged in "ribald" behavior when he saw that Plaintiff was in segregation.

Plaintiff states that in the "Winnicki case"[1], Defendants' interference with his mail caused him to receive correspondence from the United States Supreme Court two to three weeks after the letter had been postmarked, which caused Plaintiff to be late in filing his petition for writ of certiorari. However, Plaintiff also concedes that he erroneously believed that the extension of time to file his petition was 90 days, when in fact it was only for 60 days. Plaintiff states that his

---

[1] *Hardy v. Winnicki*, Case No. 2:09-cv-259 (W.D. Mich. 2010).

appeal in *Hardy v. Bolton*, Case No. 2:09-cv-256, was improperly dismissed for failure to file a motion to proceed *in forma pauperis* on appeal. Plaintiff states that he did mail such a motion and that it must have been intercepted by prison officials. Plaintiff attempted to write letters to the Sixth Circuit explaining what had happened, as well as resubmitting his prisoner trust account statement, to no avail. Plaintiff then filed a petition for writ of certiorari with the United States Supreme Court, who informed Plaintiff that they could not address his claims until his case had been reviewed by the Sixth Circuit or the Michigan Supreme Court.

Plaintiff claims that Defendants violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, Plaintiff claims that he was subjected to harassment by Defendants in violation of his Eighth Amendment rights. Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985).

Although harassment and verbal abuse are not condoned by the courts and should not be tolerated by correctional authorities, allegations regarding this type of abuse do not present a constitutional violation. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987); *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *2 (6th Cir. Feb. 1, 1996); *Green v. Hill*, No. 94-1851, 1995 WL 764119 at *1 (6th Cir. Dec. 27, 1995). The use of insulting racial slurs is also insufficient to support a constitutional claim. *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at * 1 (6th Cir. March 28, 1994); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993). In light of the foregoing, Plaintiff's allegations of harassment fail to state a claim for a violation of the Eighth Amendment.

Plaintiff also claims that when he arrived in the segregation unit at URF, his inhalers were confiscated. Plaintiff claims that on May 29, 2011, he had a "respiratory attack" and asked "prison guards" for help, to no avail. In addition, Plaintiff claims that in April of 2011, he was given Naproxen for pain, which was not effective for his pain. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In this case, Plaintiff claims that his inhalers were taken, but fails to state whether he regularly used the inhalers, what his diagnosis was, or if the deprivation of the inhalers caused him to suffer any injury. With regard to Plaintiff's asserted "respiratory attack" on May 29, 2011, Plaintiff fails to specify the names of the alleged "prison guards" who refused to help him or to specifically describe the nature of his respiratory attack. Plaintiff's allegations of an Eighth Amendment violation in this regard is wholly conclusory and fails to specify any incident which shows an "unnecessary and wanton infliction of pain" sufficient to state a claim for relief under § 1983. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).

Moreover, with regard to the Naproxen prescription, Plaintiff appears to disagree with the medical treatment he was given. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x

720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Therefore, Plaintiff has failed to allege a violation of his Eighth Amendment rights on the basis of these facts.

Plaintiff claims that he received multiple false misconduct convictions, which resulted in his placement in segregation. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in

administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Here, Plaintiff clearly has failed to suggest that his stay in segregation imposed an atypical and significant hardship.

Plaintiff also claims that these misconduct tickets and convictions were motivated by a desire to retaliate against Plaintiff in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

"A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *See Jackson v. Madery,* 158 F. App'x 656, 662 (6th Cir. 2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994)). "False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing." *Jackson*, 158 F. App'x at 662. Plaintiff concedes that he was found guilty of the misconduct tickets following a hearing. In addition, Plaintiff concedes that he actually engaged in the conduct for which he received two of the tickets. Specifically, Plaintiff

states that on October 16, 2010, Plaintiff went to the law library without permission in order to retrieve his ink pens after he mistakenly left them at the law library. Plaintiff states that he repeatedly asked Defendant Witgen to call the school about the pens, to no avail. On July 26, 2010, Defendant Russell wrote a misconduct on Plaintiff for leaving clothes on his bed. Plaintiff concedes that he did have clothes on his bed, but claims that he had received permission from a prison doctor to use "something" to prop his legs up in order to alleviate back pain.

With regard to Plaintiff's claim that Defendants Russell, Witgen, and Riedel wrote numerous misconduct tickets on him, the court notes that although temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). The court concludes that because Plaintiff fails to allege any specific facts regarding the alleged misconduct of Defendants Russell, Witgen, and Riedel, his retaliation claims against them are properly dismissed.

Plaintiff claims that after he was transferred to LMF on June 8, 2011, he discovered that he was missing several items of property. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Jul. 9, 2012). Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Plaintiff claims that his First Amendment right of access to the courts was violated in *Hardy v. Winnicki*, Case No. 2:09-cv-259 (W.D. Mich. 2010), when Defendants interfered with his mail, causing him to receive correspondence from the United States Supreme Court two to three weeks after the letter had been postmarked. This caused Plaintiff to be late in filing his petition for writ of certiorari. However, Plaintiff also concedes that he erroneously believed that the extension of time to file his petition was 90 days, when in fact it was only for 60 days. Plaintiff also states that his appeal in *Hardy v. Bolton*, Case No. 2:09-cv-256, was dismissed after his motion to proceed *in forma pauperis* on appeal was intercepted by prison officials. Plaintiff attempted to resubmit his prisoner trust account statement, to no avail. Plaintiff then filed a petition for writ of certiorari with the United States Supreme Court, who informed Plaintiff that they could not address his claims until his case had been reviewed by the Sixth Circuit or the Michigan Supreme Court.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to

enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a

complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

With regard to *Hardy v. Winnicki*, No. 2:09-cv-259 (W.D. Mich. 2010), the court notes that it was dismissed on January 7, 2010, for failure to state a claim and it was determined that an appeal would not be in good faith (docket #5 and #6). This dismissal was affirmed by the Sixth Circuit Court of Appeals on December 30, 2010 (docket #13). Therefore, it is clear that Plaintiff's claims in Case No. 2:09-cv-259 did not assert a non-frivolous claim. Consequently, Plaintiff's First Amendment rights were not violated in relation to that case.

The court notes that in *Hardy v. Bolton*, Case No. 2:09-cv-256, Defendants' motion for summary judgment was granted based on Plaintiff's failure to exhaust administrative remedies. In responding to the motion, Plaintiff conceded that he did not appeal the denial of his grievances

to either step II or step III. As noted by the court in the February 17, 2011 opinion, a prisoner must pursue all levels of the administrative procedure before filing an action in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). In addition, MDOC Policy Directive 03.02.130, ¶ B requires that a prisoner must grieve through all three steps in order to exhaust his administrative remedies. Therefore, it is clear that Plaintiff's appeal on the dismissal for failure to exhaust was frivolous. Because the underlying actions did not assert non-frivolous claims, Plaintiff's First Amendment access to courts claims are properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:     10/17/2013             /s/ R. Allan Edgar
                                  R. Allan Edgar
                                  United States District Judge