UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID HARDY,

                Plaintiff,                Case No. 2:13-CV-37

v.                                              Honorable R. Allan Edgar

WILLIAM ADAMS, et al.,

                Defendants.
_____/

**OPINION AND ORDER**

Plaintiff David Hardy, an inmate that was confined by the Michigan Department of Corrections (MDOC) during the relevant time periods, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. After screening and review by the Sixth Circuit, Plaintiff's remaining claims are against the following Defendants: Assistant Resident Unit Supervisor (ARUS) Linda Adams, William Adams, Resident Unit Officer (RUO) Christopher Darling, RUO John Russell, RUO Randy Witgen, RUO Robert Riedel, Resident Unit Manager (RUM) Robert Ault, Assistant Deputy Warden (ADW) Michael Olson, ARUS Robert Batho, Corrections Officer (CO) Levi Bender, CO Scott Beamish, and CO Todd Tarbell.[1]  PageID.575.  Plaintiff seeks declaratory relief and punitive damages.

The Court interprets Plaintiff's remaining claims against the aforementioned Defendants as follows:

> I. Defendants Russell, Witgen, and Riedel wrote numerous false misconduct tickets against him in retaliation for lawsuits he had filed

---

[1] Because Defendants Gerry and MacDonald were not served in this case, the claims against these two Defendants are dismissed. Fed. R. Civ. P. 4(m).

against Chippewa employees. In addition, Defendant William Adams wrongly found him guilty of the misconduct tickets that Defendants Russell, Witgen, and Riedel wrote against him, in retaliation for the Chippewa lawsuits.

II. Defendant Ault retaliated against Plaintiff when he reviewed the grievance Plaintiff filed against Defendant Linda Williams.

III. Defendants Bender, Beamish, and Tarbell wrote false misconduct tickets against Plaintiff for disobeying a direct order, refusing to go to general population, and refusing to leave the shower (among other tickets), and they did so in retaliation for Plaintiff filing the Chippewa lawsuits.

IV. Defendant Olson transferred Plaintiff back to Chippewa in retaliation for the lawsuits Plaintiff filed against Chippewa staff.

V. Defendants Darling and Linda Adams retaliated against Plaintiff when they told him to send some of his property home and to drop the Chippewa lawsuits, or else they would make his life a "living hell."

VI. Defendant Batho retaliated against Plaintiff when he refused to provide him with his legal property for three weeks while Plaintiff was in segregation, and when he interfered with Plaintiff's legal mail, which resulted in his Chippewa cases being dismissed for failure to prosecute.

*See generally* ECF No. 1; *see also* PageID.55, 137-138, 143-144, 216-217, 237, 251, 788-789, 791, 793, 795, 798. Defendants filed a motion for summary judgment on November 25, 2015. ECF No. 93. Plaintiff filed a response in opposition to Defendants' motion for summary judgment on December 28, 2015. ECF No. 99. Defendants did not file a reply. The matter is now ready for a decision.

The following are the events in question viewed in the light most favorable to Plaintiff. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a

summary judgment motion are accepted as true)). Due to events occurring while housed at the Chippewa Correctional Facility (Chippewa), Plaintiff filed a total of three federal claims against Chippewa staff. *See Hardy v. Winniki*, 2:09-CV-259; *Hardy v. Bolton*, 2:09-CV-256; *Hardy v. West*, 2:09-CV-257. Plaintiff was then transferred from Chippewa to the Central Mid-Michigan Correctional Facility (Mid-Michigan). Plaintiff believes that when he was transferred, an unknown Warden from Chippewa called an unknown Warden at Mid-Michigan to let Mid-Michigan staff know that Plaintiff is a "troublemaker" and that he had filed lawsuits against Chippewa employees. PageID.788. Plaintiff then claims that the unknown Warden at Mid-Michigan told Defendant Linda Adams this information. PageID.788. Subsequently, Plaintiff claims that Defendants Linda Adams and Darling called Plaintiff into Linda's office and told him to stop working on his Chippewa cases, or else they would make his life a "living hell." PageID.788. In addition, Plaintiff indicates that Defendant Darling told him that he needed to send some of his property home because he had too much. PageID.793. Based on this situation, Plaintiff wrote a grievance against Defendant Linda Adams. PageID.788, 790. Defendant Ault reviewed this grievance. PageID.788.

      Given Plaintiff's issue with Defendant Linda Adams, Plaintiff was allowed to change his housing unit, and Plaintiff chose to house in Defendant William Adams' unit. PageID.789. Defendants Russell, Witgen, and Riedel were stationed in Defendant William Adams' unit at that time. PageID.788. Defendants Russell and Witgen allegedly told Plaintiff that they were "going to write so many tickets on [him] that it's going to boost [his] level [of] point[s]" so that he gets transferred to a higher security level prison. PageID.789-790. Plaintiff claims that Defendants Russell, Witgen, and Riedel then wrote numerous false misconduct

tickets against him. PageID.789. For example, Defendant Riedel wrote a ticket against Plaintiff for having clothes on his bed. PageID.793. Defendant William Adams reviewed and found Plaintiff guilty of these misconduct tickets. PageID.789.

Based on being found guilty of many misconduct tickets, Plaintiff was elevated from a security level one to a security level four, and as such he was transferred to the level four section of Mid-Michigan for four or five days. PageID.790-791. In addition, Defendant Olson signed off on Plaintiff's transfer back to Chippewa. PageID.791. At Chippewa, Plaintiff refused to lock up in general population, so he was written up for disobeying a direct order and he was sent to segregation. PageID.795. While in segregation, Plaintiff wrote several kites to obtain his legal property, but he did not receive his property until three weeks later. PageID.795. Also, while still in segregation, Defendant Batho did not send out or process Plaintiff's legal mail. PageID.796.

After Plaintiff was returned to Chippewa, Defendants Bender and Beamish wrote numerous false tickets against Plaintiff for disobeying a direct order, and refusing to go to general population (among other tickets). PageID.797. In addition, Defendant Tarbell wrote a misconduct ticket against Plaintiff for refusing to leave the shower. PageID.798.

Based on these occurrences, Plaintiff asserts that Defendants violated his constitutional rights. ECF No. 1. Plaintiff seeks legal redress before this Court for these alleged violations.

I.

Presently before the Court is Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad*, 379 F.3d at 416 (*citing Adams*, 31 F.3d at 382). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Notably, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court could not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf.*

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

II.

Plaintiff's remaining claims against Defendants assert violations of his First Amendment right to be free from retaliation. In general, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

**A. Misconduct Tickets and Grievances**

Plaintiff claims that numerous Defendants at both Mid-Michigan and Chippewa filed false misconduct tickets against him, which violated his First Amendment right to be free from retaliation.

*i. Mid-Michigan*

Plaintiff makes several allegations against Med-Michigan prison staff. First, he claims that while at Mid-Michigan, Defendants Russell and Witgen told him that they were "going to write so many tickets on [him] that it's going to boost [his] level [of] point[s]" so that

Plaintiff would be transferred to a higher security level prison. PageID.789-790.  Plaintiff claims Defendants Russell, Witgen, and Riedel subsequently wrote numerous false misconduct tickets against him. PageID.789; PageID.793; PageID.214-215 (noting Defendant Witgen wrote a major misconduct against Plaintiff for disobeying a direct order); PageID.216-217 (noting, for example, that Defendant Riedel or Russell wrote a ticket against Plaintiff for having clothes on his bed, and he was found guilty of it). Second, Plaintiff claims that Defendant William Adams reviewed these misconduct tickets, and wrongly found Plaintiff guilty of all of these tickets. PageID.789. Finally, Plaintiff claims that Defendant Ault retaliated against Plaintiff when he reviewed the grievance that Plaintiff filed against Defendant Linda Adams. PageID.788, 790.

Upon review of Plaintiff's first claim of retaliation against Defendants Russell, Witgen, and Riedel, it is clear that this claim fails. This is because when a plaintiff is ultimately found guilty of a misconduct charge, the plaintiff cannot state a claim for retaliation arising from the misconduct charges. *See Jackson v. Madery*, 158 Fed. App'x 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'")); *see also Briggs v. Burke*, No. 1:13-CV-1160, 2015 WL 5714520, at *1 (W.D. Mich. Sept. 29, 2015); *Thompson v. Moran*, No. 1:13-CV-499, 2015 WL 753149, at **1, 4 (W.D. Mich. Feb. 23, 2015) ("Where a prisoner alleges that prison personnel retaliated against him by filing a false misconduct violation, [a] finding of guilt based upon some evidence of a violation of prison rules essentially checkmates [a] retaliation claim.") (citations and quotations omitted).

In this case, Plaintiff openly admitted that he was found guilty of every misconduct ticket that was written against him by Defendants Russell, Witgen, and Riedel.

PageID.789 (Defense Attorney: "Were you found guilty on the tickets?" Plaintiff: "Correct."). As a result, Plaintiff's claim for retaliation arising from these misconduct tickets is properly dismissed since he was found guilty of these misconducts.

Plaintiff's second claim is that Defendant William Adams wrongly found him guilty of these misconduct tickets. Under the first prong of a retaliation claim, Plaintiff sufficiently demonstrated that he engaged in protected conduct—filing lawsuits against Chippewa employees. *See* PageID.790; *see also Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) ("[P]rotected conduct, for purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims."). Under the second prong, he sufficiently alleges that the adverse action Defendant William Adams took against him was finding him guilty of the false misconduct tickets that were written by Defendants Russell, Witgen, and Riedel. PageID.789; *see Thomas v. Eby*, 481 F.3d 434, 441(6th Cir. 2007).

However, Plaintiff has failed to demonstrate the causal connection under the third prong of his retaliation claim. Plaintiff's contends that Defendant William Adams wrongly found him guilty of several false misconduct tickets because of his Chippewa lawsuits; but, this speculative statement is not supported by any evidence. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at * 1 (9th Cir. Apr. 10, 1992); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (noting it is well recognized that "retaliation" is easy to allege and

that it can seldom be demonstrated by direct evidence). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant William Adams retaliated against him because he filed a lawsuits against Chippewa staff.

Even if Plaintiff had sufficiently alleged all three elements of his retaliation claim against Defendant William Adams, his claim would still fail. Defendant William Adams is a hearing officer that reviews misconduct tickets for the MDOC. The Sixth Circuit has held that "Michigan hearing officers are professionals in the nature of administrative law judges." *Fields v. Gerth*, No. 2:13-CV-306, 2013 WL 6384592, at *2 (W.D. Mich. Dec. 6, 2013) (citing *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988)). Consequently, hearing officers are "entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers." *Id.* (collecting Sixth Circuit cases). Accordingly, Plaintiff's claim against Defendant William Adams fails because, as a hearing officer, he is absolutely immune under the circumstances of Plaintiff's claim.

Finally, with regard to Plaintiff's final claim, that Defendant Ault retaliated against Plaintiff when he reviewed the grievance Plaintiff filed against Defendant Linda Williams, this claim also fails. Plaintiff sufficiently demonstrated that he engaged in protected conduct (filing a grievance against Defendant Linda Williams for making a threat against Plaintiff). PageID.55, 788-789; *see Smith*, 250 F.3d at 1037 (noting that filing a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). However, Plaintiff has failed to

allege an adverse action as required under the second prong of his retaliation claim. PageID.788-789. Plaintiff states that Defendant Ault was "part of 'the team' who caused Plaintiff'[s] life to be [a] "'. . . living hell . . . '" (PageID.55), but this conclusory statement does not provide the Court with any guidance regarding the harm he allegedly suffered as a result of Defendant Ault's review of this grievance. *See Salstrom*, 1992 WL 72881, at * 1; *see also Iqbal*, 556 U.S. at 678; *Harbin-Bey*, 420 F.3d at 580. Consequently, because Plaintiff could not provide support for, or even articulate, an adverse action under the second prong for his retaliation claim, his claim against Defendant Ault fails.

### *ii Chippewa*

Plaintiff also raises several claims against Chippewa MDOC staff. First, he asserts that Defendants Bender and Beamish wrote false tickets against Plaintiff for disobeying a direct order and refusing to go to general population (and among other tickets). PageID.237; PageID.239-240 (disobeying a direct order to go back to his unit, for which he was found guilty); PageID.254 (noting Plaintiff was found guilty of destruction or misuse of property); PageID.255 (noting Defendant Bender wrote a food loaf request form for Plaintiff, and a misconduct for this incident); PageID.257-258 (noting Defendant Bender wrote a misconduct against Plaintiff for refusing to go to general population and that he was found guilty); PageID.261-262, 275-276 (noting Defendant Beamish told Plaintiff to pack up his property and move to general population, Plaintiff refused, and he was found guilty); PageID.797. Next, he claims that Defendant Tarbell filed a false misconduct ticket against him, which alleged that Plaintiff refused to get out of the shower. PageID.251, 798 (stating Defendant Tarbell wrote a class II misconduct against Plaintiff for not getting out of the shower as ordered, for which he was found guilty). Plaintiff claims that

these false misconduct tickets were written against him in retaliation for the three lawsuits he filed against Chippewa staff. PageID.797.

Upon review of each misconduct ticket that was issued by Defendants Bender, Beamish, and Tarbell (that Plaintiff provided to the Court), it is clear that Plaintiff was found guilty of each ticket. When a plaintiff is ultimately found guilty of the misconduct charge, the plaintiff cannot state a claim for retaliation arising from the misconduct charges. *See Jackson*, 158 Fed. App'x at 662 (quoting *Henderson*, 29 F.3d at 469 ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'")); *see also Thompson*, 2015 WL 753149, at **1, 4 ("Where a prisoner alleges that prison personnel retaliated against him by filing a false misconduct violation, [a] finding of guilt based upon some evidence of a violation of prison rules essentially checkmates [a] retaliation claim.") (citations and quotations omitted). As a result, Plaintiff's retaliation claims against Defendants Bender, Beamish, and Tarbell fail.

**B. Transfer**

Plaintiff's next retaliation claim alleges that Defendant Olson (of Mid-Michigan) transferred Plaintiff back to Chippewa in retaliation for filing lawsuits against Chippewa employees. PageID.55, 143-144, 791. Filing a lawsuit is considered to be constitutionally protected conduct for which he may not be subjected to retaliation, so Plaintiff has satisfied the first retaliation prong. *See Bell*, 308 F.3d at 607 (6th Cir. 2002) ("[P]rotected conduct, for purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims.").

However, even assuming (without deciding) that Plaintiff suffered an adverse

action by being transferred back to Chippewa (thereby satisfying the second retaliation prong), Plaintiff has failed to demonstrate that Defendant Olson transferred Plaintiff because of his pending lawsuits against Chippewa staff (as required to fulfill the third retaliation element). Plaintiff theorizes that Defendant Olson was told (by an unknown person) about the lawsuits Plaintiff had filed against Chippewa staff, and that this knowledge caused Defendant Olson to transfer Plaintiff for no other reason than to retaliate against him. Plaintiff does not support this theory with any evidence. Rather, the evidence Plaintiff provided to the Court shows that Defendant Olson never reviewed Plaintiff's security level for the purpose of transferring Plaintiff at all. PageID.143-144 (noting the purpose of the screen was to correct a previous screen done by another MDOC employee); *cf.* PageID.146-149 (showing that it was Erick Balcarcel, Kelly Best, Duncan Maclaren, Daniel Lesatz that conducted reviews of Plaintiff's security level for the purpose of transferring Plaintiff). As a result, Plaintiff has not demonstrated that Defendant Olson retaliated against him, meaning his claim fails. *See Salstrom*, 1992 WL 72881, at * 1; *see also Iqbal*, 556 U.S. at 678; *Harbin-Bey*, 420 F.3d at 580.

### C. Property

Plaintiff makes two claims asserting that Defendants at both Mid-Michigan and Chippewa retaliated against him by trying to take or withhold his property: (1) Defendants Darling and Linda Adams, of Mid-Michigan, told him that he needed to send some of his property home because Plaintiff had too much (PageID.793.), and that if he did not drop the Chippewa suits, they would make his life "a living hell," (PageID.137-138, 788) and (2) Defendant Batho delayed providing him with his legal property for three weeks while he was in segregation (PageID.795). Plaintiff claims that these actions were taken against him because of

the lawsuits he had pending against Chippewa employees. Again, because Plaintiff claims that his Chippewa lawsuits initiated these instances of retaliation, Plaintiff has sufficiently alleged that he engaged in constitutionally protected conduct under the first prong of his retaliation claim. Therefore Plaintiff must establish only the second and third elements of these claims.

With regard to Plaintiff's first claim, that Defendants Darling and Linda Adams retaliated against him by telling him to send home some of his property and to drop the suits against the Chippewa employees or else they would make his life a living hell, Plaintiff has not stated an adverse action. A specific threat of harm may satisfy the adverse-action requirement, but only if the threat would deter a person of ordinary firmness from exercising his First Amendment rights. *See, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). Here, Plaintiff does not allege that Defendants Darling or Linda Williams threatened any *specific* harm to him; rather, he simply makes a vague assertion that they would make his life "hell" if he did not send home some of his property and drop the Chippewa lawsuits. As a result, this non-specific threat of harm is not sufficient to satisfy the adverse action requirement of Plaintiff's retaliation claim, meaning his claim against Defendants Linda Adams and Darling fails.

With regard to Plaintiff's second claim, (that while he was in segregation at Chippewa, Defendant Batho wrongly deprived him of his legal property for three weeks), Plaintiff has sufficiently stated an adverse action. PageID.795. The Sixth Circuit has held that "confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim." *Bell*, 308 F.3d at 604 (collecting cases). As a result, being deprived of his legal material would be considered an adverse action that could deter an ordinary

person from filing lawsuits in the future.

However, Plaintiff has failed to establish that Defendant Batho withheld his legal property from him because of Plaintiff's Chippewa lawsuits. Aside from making the allegation that Defendant Batho withheld his legal property from him, Plaintiff has provided no documentation or evidence to show that Defendant Batho was in charge of producing prisoners' legal property to them or that he did, in fact, withhold Plaintiff's legal property. As a result, Plaintiff's blanket assertion of retaliatory motive is not sufficient to state a claim against Defendant Batho, and this claim fails. *Salstrom*, 1992 WL 72881, at * 1; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### E. Legal Mail

Plaintiff's final claim of retaliation alleges that Defendant Batho did not send out or process Plaintiff's legal mail while Plaintiff was in segregation, which resulted in Plaintiff's Chippewa lawsuits being dismissed for failure to prosecute. PageID.796. "In order to state a claim for denial of meaningful access to the courts . . . plaintiffs must plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Here, the Sixth Circuit has already determined that Plaintiff's Chippewa cases were not dismissed for failure to prosecute, as Plaintiff alleges. PageID.574-575 (noting his cases were dismissed for failure to exhaust and failure to state a claim). As a result, even assuming that Defendant Batho did interfere with Plaintiff's legal mail, Plaintiff has not demonstrated that he was prejudiced by this action. Therefore, Plaintiff's retaliation claim against Defendant Batho fails.

III.

Overall, despite the Court's obligation to construe handwritten *pro se* documents liberally, Plaintiff's § 1983 fails. Fed. R. Civ. P. 56; *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and will only be dismissed if the claim undoubtedly contains no facts to support its request for relief). Accordingly, Defendants' Motion for Summary Judgment is appropriate.

In light of the foregoing, this Court concludes that Defendants' Motion for Summary Judgment (ECF No. 93) is **GRANTED** and this case will be dismissed with prejudice in its entirety. An Order and Judgment consistent with this Opinion will be entered. In addition, Plaintiff's motion in limine (ECF No. 86), motion to compel discovery (ECF No. 110), and motions for an extension of time (ECF No. 110, 111) are denied as moot.

**SO ORDERED**.


Dated:__5/20/2016____                                  __/s/ *R. Allan Edgar*_____
                                                       R. ALLAN EDGAR
                                                       UNITED STATES DISTRICT JUDGE